# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MESA LABORATORIES, Inc., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 19 C 2340 |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | Judge John Z. Lee |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mesa Laboratories, Inc. ("Mesa") sterilizes medical devices. To promote its services, Mesa faxed unsolicited ads to dozens of dentists and their assistants. When one of those dentists initiated a class action lawsuit, Mesa turned to its liability insurer, Federal Insurance Company ("Federal"), for help. But Federal declined. Having spent millions of dollars to resolve the dentists' action, Mesa has sued Federal for breach of contract, bad faith, and improper denial of claims, see Colo. Rev. Stat. Ann. §§ 10-3-1115; 10-3-1116. Convinced that it owed no duty to defend or indemnify Mesa, Federal urges the Court to enter judgment on the pleadings in its favor [16]. *See* Fed. R. Civ. P. 12(c). For the reasons that follow, that motion is granted.

<h1 style="text-align:center">Background[1]</h1>

## I.     The *Orrington* Action

Hoping to attract new customers, Mesa dispatched unsolicited ads to dozens of dental professionals.  But, rather than getting new customers, Mesa's plan backfired.  Acting on behalf of a putative class, a dentist named James L. Orrington filed a complaint alleging that Mesa's faxes violated the Telephone Consumer Protection Act, see 47 U.S.C. § 227 ("TCPA") and the Illinois Consumer Fraud Act, see 815 ILCS 505/2 ("ICFA").  Ex. A, *Orrington* Compl., ECF No. 1-1.  And, because the faxes consumed ink and toner, Orrington also accused Mesa of common law conversion, nuisance, and trespass to chattels.  *Id*.

About a year after Orrington submitted his complaint, the parties entered into a settlement agreement.    Compl. ¶¶7–8, ECF No. 1.  To resolve the dentists' claims, Mesa agreed to pay $3.3 million.  *Id*.  By that time, Mesa had accumulated more than $75,000 in legal fees.  *Id*. ¶ 8.

## II.    Mesa's Insurance Policy

At the time Orrington filed suit, Mesa held several insurance policies issued by Federal.  *Id*. ¶ 9.  The policy at the center of this case, no. 3602-70-77, specifies that Federal "will pay damages and claimant costs that the insured becomes legally obligated to pay."  *Id*. ¶ 10; *see* Exhibit D, Liability Insurance Policy ("Policy"), ECF No. 1-4.  As relevant here, that policy includes two exceptions:

---

[1]     When reviewing a Rule 12(c) motion, the Court considers the facts alleged in the pleadings in the light most favorable to the non-moving party.  *See Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).  The facts set forth here are not disputed.

### 1.    The Intended or Expected Exclusion

Mesa's liability insurance policy provides that the it "does not apply to bodily injury or property damages arising out of any act or failure to act:

- intended by the insured; or

- that would be expected from the standpoint of a reasonable person in the circumstances of the insured to cause injury or damage, even if the actual injury or damage is of a different degree or type than expected or intended."

Policy at 56.

Consistent with this limitation, the Policy only covers property damages that stem from an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 56–57.

### 2.    The Information Exclusion

The Policy also "does not apply to any damages, loss, cost or expense arising out of any actual or alleged or threatened violation of: . . .

- the United States of America Telephone Consumer Protection Act (TCPA) of 1991 (or any law amendatory thereof) or any similar regulatory or statutory law in any other jurisdiction. . . . [or]

- any other regulatory or statutory law in any jurisdiction that addresses, limits or prohibits the collecting, communicating, disposal, dissemination, distribution, monitoring, printing, publication, recording, sending or transmitting of content, information or material."

Policy at 94.

### III.    This Litigation

Soon after Orrington filed suit, Mesa notified Federal and requested coverage. Compl. ¶13.  Federal declined.  *Id*. ¶14.  The Information Exclusion, Federal said, "applies to TCPA claims and claims under similar statutory and regulatory laws."  *Id*. Also, Federal added, Orrington's common law claims "did not meet the [policy's] definition of 'occurrence' because the conduct at issue was not an accident, *i.e.*, the fax transmitter(s) intended for the faxes to be printed by the recipients' fax machines."  *Id*.  Believing that neither exception applies, Mesa brought this action. Compl. ¶19.

### Legal Standard

Rule 12(c) permits a party to move for judgment after the complaint and answer have been filed.  *See* Fed. R. Civ. P. 12(c).  A Rule 12(c) motion tests the sufficiency of claims based on the pleadings.  *Hayes v. City of Chi.*, 670 F.3d 810, 813 (7th Cir. 2012).  When reviewing such a motion, the Court takes all facts pleaded in the complaint as true and draws "all reasonable inferences and facts in favor of the nonmovant."  *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). "The pleadings include the complaint, the answer, and any written instruments attached as exhibits."  *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).  A court will grant a motion for judgment on the pleadings when it is clear that the non-moving party cannot prove any set of facts sufficient to support its claim.  *Hayes,* 670 F.3d at 813.

<u>Analysis</u>

Federal advances two reasons for this Court to enter judgment in its favor. First, Federal submits that, because Mesa knew that its fax-blast would consume the recipients' paper and toner, the Intended or Expected Exclusion applies. Second, Federal suggests that because Orrington's claims arise out of an alleged TVPA violation, they fall within the scope of the Information Exclusion. Before addressing those arguments, the Court must decide whether Colorado or Illinois law governs this suit which invokes the Court's diversity jurisdiction.

## I.  Choice of Law

In general, the party seeking a choice-of-law determination bears the burden of showing that a conflict exists. *See Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 729 (7th Cir. 2014). "Where the parties have not identified a conflict between the two bodies of law that might apply to the dispute . . . courts apply the law of the forum state." *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993). Here, Mesa argues that Illinois and Colorado law are at odds, and thus invites the Court to perform a choice-of-law analysis.

The primary conflict that Mesa highlights centers on the term "occurrence." *See* Pl.'s Resp. Mot. J. ("Pl.'s Resp.") at 3, ECF No. 22. In Mesa's telling, Illinois law defines an "occurrence" to exclude any harm that stems from the insured's intentional acts. *Id.* at 10 (citing *Am. States Ins. Co. v. Capital Assoc. of Jackson Cnty., Inc.,* 392 F.3d 939, 943 (7th Cir. 2004)). Under Colorado law, however, the question is not whether the insured acted intentionally, but whether it expected the resulting harm.

*Id.* at 11 (citing *KF 103-CV, LLC v. Am. Family Mut. Ins. Co.*, 630 Fed. App'x 826, 831–32 (10th Cir. 2015) (unpublished opinion) (clarifying that a trespass may count as an occurrence since "it is not necessarily expected or intended that harm would result")); *see also Colard v. Am. Family Mut. Ins. Co.*, 709 P.2d 11, 13 (Colo. App. 1985) (categorizing "the damage . . . at issue" as "an occurrence" because it was "neither expected nor intended") (quotation marks omitted).

But this purported conflict rests on a misreading of Illinois law. In truth, Colorado and Illinois courts understand "occurrence" the same way. In *American States*, for example, the Seventh Circuit analyzed an insured's request for help defending a fax-blast lawsuit. *See* 392 F.3d at 940 (applying Illinois law). Because the insured "expected or intended" to "use up the recipients' paper and ink," the court refused to classify the fax-blast as an "occurrence." *Id.* at 943; *see also Addision Automatics, Inc. v. Hartford Cas. Ins. Co.*, 13-cv-1922, 2015 WL 1543216, at *9–10 (N.D. Ill. Mar. 31, 2015) ("The allegations of the underlying complaint do not trigger coverage because the use of the paper and ink was an expected, not unplanned, result."). The upshot is that, under both Illinois and Colorado law, an event or action that results in a harm that the insured does not expect or intend counts as an "occurrence."

As a last resort, Mesa cautions that, "Colorado and Illinois take different approaches to dealing with insurance companies that act in bad faith, as Plaintiff has alleged Defendant did here." Pl.'s Resp. at 3 n.2. But any conflict between Colorado and Illinois law as to Mesa's bad faith claim makes no difference to the issues raised

in Federal's Rule 12(c) motion. *See Fed. Ins. Co. v. J.K. Mfg. Co.*, 933 F. Supp. 2d 1065, 1070 (N.D. Ill. 2013) ("A choice-of-law determination is required only when a difference in law will make a difference in the outcome.") (citation omitted). In the end, since Mesa has failed to pinpoint any relevant conflicts of law, this Court will apply the law of Illinois, the forum state. *See Thornton v. M7 Aerospace, LP*, 796 F.3d 757, 766 (7th Cir. 2015).

## II. Merits

It is well-established that "[t]he construction of an insurance policy's provisions is a question of law." *Outboard Marine Corp. v. Liberty Mut. Ins. Corp.*, 607 N.E.2d 1204, 1212 (Ill. 1992). "To determine whether the insurance company owes its insured a defense, the court must simply compare the allegations of the underlying complaint against the insured to the pertinent provisions of the insurance policy." *Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.,* 139 F.3d 561, 565 (7th Cir. 1998). Along the same lines, "if the insurance policy does not cover what is alleged in the claim, the insurer will not have a duty to indemnify based on that claim." *Keystone Consol. Indus., Inc. v. Employers Ins. Co. of Wausau,* 456 F.3d 758, 762 (7th Cir. 2006).

Here, Federal contends it owes no duty to defend or indemnify Mesa because Orrington's action falls within two of the Policy's exclusions. As the Seventh Circuit has warned, where "an insurer denies a duty to defend based on an exclusionary clause within a policy, 'its application must be clear and free from doubt.'" *Hurst–Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.,* 51 F.3d 1336, 1342 (7th Cir. 1995)

(citation and internal quotation marks omitted). "The burden of proving that a claim falls within an exclusion rests squarely on the insurer" and "[a]ny ambiguities within the policy must be construed in favor of the insured." *Id.* With these principles in mind, the Court examines the Policy's exclusions.

### A.    The Intended or Expected Exclusion

Under the Policy, Federal pledged to help Mesa defeat lawsuits that stem from accidents, which insurers call "occurrences." Policy at 56–57. As explained earlier, the term "occurrence" excludes harms that Mesa intended or expected. So, if Mesa anticipated that its fax-blast would squander Orrington's paper and toner, Federal is off the hook. *See Orrington* Compl. ¶13.

Unfortunately for Mesa, the Seventh Circuit has recognized that "senders [of junk faxes] know exactly how faxes deplete recipients' consumables." *Am. States*, 392 F.3d at 943; *see also Maxum Indem. Co. v. Eclipse Mfg. Co.*, 848 F. Supp. 2d 871, 880 (N.D. Ill. 2012) ("[P]roperty damage coverage clearly does not apply to this loss as the senders of the faxes anticipate that the recipient's paper and toner will be used up on receipt of the fax."). And, although some Illinois courts have criticized *American States*, see *Insurance Corp. of Hanover. v. Shelborne Associates*, 905 N.E.2d 976, 983–84 (Ill. App. Ct. 2009) ("[I]f an insured believed its fax was welcome, then any injury was not expected or intended"); *Standard Mutual Insurance Co. v. Lay*, 2 N.E.3d 1253, 1259–60 (Ill. App. Ct. 2014) (same), this Court remains bound by the Seventh Circuit's prediction of how the Illinois Supreme Court would decide this issue. *See Maxum*, 848 F. Supp. 2d at 881 n.11.

In any event, Mesa's argument would fail even under the more generous standard adopted by some Illinois courts. "[T]he recipient of a fax is not injured by the loss of paper and use of its fax machine," those courts warn, "if he or she welcomes or solicits the fax." *Shelborne*, 905 N.E.2d at 984. Invoking that principle, Mesa asserts that "the faxes at issue [here] were sent with a good faith belief that [they] were invited by the recipients." Compl. ¶ 15(c).

But the fax, which Mesa attached to its complaint, forecloses that possibility. *See Orrington* Compl. ¶ 22; *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Touting an "exclusive offer for new customers," Mesa's fax encouraged recipients to submit their contact information "to get started." *Orrington* Compl. ¶ 22. Even viewed in the light most favorable to Mesa, those instructions confirm that the dentists did not invite the faxes. Had they done so, it is difficult to see why Mesa would need to solicit their contact information. And the ad, not Mesa's complaint, controls. *See N. Indiana Gun Shows*, 163 F.3d at 454 ("[W]hen a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations."). It follows that Mesa, like any other sender of junk faxes, expected to harm the recipients by depleting their ink and paper. For that reason, Federal owed no duty to defend Mesa against Orrington's action.

## B. The Information Exclusion

Even if the Expected or Intended Exclusion did not bar Mesa's claim, the Information Exclusion would. Under that provision, Federal disclaimed

responsibility for "any damages . . . arising out of any actual or alleged or threatened violation of . . . the Telephone Consumer Protection Act (TCPA) or any similar regulatory or statutory laws." Policy at 94. Although the parties agree that the Exclusion covers Orrington's TCPA claim, see Pl.'s Resp. at 4, they dispute whether it extends to his common law claims. *Id.*; *see Orrington* Compl. ¶2. That disagreement matters because "[i]f any portion of the allegations in the *Orrington* Action is potentially covered," then Federal "was obligated to provide a complete defense."[2] *See* Compl. ¶ 17.

As Mesa sees it, a straightforward reading of the Exclusion reveals that it covers claims based on "statutes and regulations," but not common law claims. Pl.'s Resp. at 5; *see* Policy at 94. That interpretation is not a slam dunk, however, because it comes close to nullifying the Exclusion altogether. *See In re Innovatio IP Ventures, LLC Patent Litig.*, 956 F. Supp. 2d 925, 937 (N.D. Ill. 2013) ("[A] contract should be interpreted so that effect is given to all its provisions, so that no part will be inoperative or superfluous.") (citations and quotation marks omitted). Most of the time, plaintiffs supplement TCPA claims with common law analogues. *See, e.g.*, *Fayezi v. Ill. Cas. Co.*, 58 N.E.3d 830, 841 (Ill. App. Ct. 2016) (collecting examples). So, if Mesa's reading prevailed, then the Information Exclusion would rarely apply.

For its part, Federal asserts that Orrington's common law claims "arise out of" Mesa's alleged TCPA violation, and thus fall within the scope of the Exclusion. *See*

---

[2] Because Federal does not challenge this assertion, see Mot. J. at 7, the Court assumes it to be true for the purposes of deciding this Rule 12(c) motion.

Mem. Supp. Mot. J. Pleadings ("Mot. J.") at 9–11, ECF No. 17. In Illinois, courts usually read the term "arising out of" as calling for but-for analysis. *See, e.g.*, *G.M. Sign, Inv., v. State Farm Fire & Cas. Co.*, 18 N.E.3d 70, 78 (Ill. App. Ct. 2014). Because all of Orrington's claims refer to the same underlying facts, and because that conduct allegedly violated the TCPA, Federal concludes that "but for the TCPA violation . . . there would have been no common law claims." Def.'s Reply at 4.

When Illinois courts interpret policy provisions that resemble the Information Exclusion, they embrace Federal's logic.[3] *See Fayezi*, 58 N.E.3d at 841; *Ill. Cas. Co. v. W. Dundee China Palace Rest., Inc.*, 49 N.E.3d 420, 425–26 (Ill. App Ct. 2015). For example, in *Fayezi*, the court construed a carve-out that parallels the Exclusion at issue here. 58 N.E.3d at 833–34. Explaining that "the underlying complaint failed to plead any specific facts that would support liability [for the common law counts] *but which would not also violate* the TCPA," the court deemed the common law claim to have "ar[i]s[en] out of" the TCPA violation. *Id.* at 846 (emphasis original); *see also Dundee*, 49 N.E.3d at 427–28 (same).

Under *Fayezi*'s logic, Federal owed no duty to defend or indemnify Mesa against any of Orrington's claims. As in *Fayezi*, Orrington's common law and TCPA

---

[3]     Even if Colorado law governed the "occurrence" issue, the Court would still apply Illinois law to interpret the Information Exclusion. Under the doctrine of depecage, "different states' law may govern different issues in a [given] case." *Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 747 (N.D. Ill. 2010) (citing *Townsend v. Sears, Roebuck, & Co.*, 879 N.E.2d 893, 901–02 (Ill. 2007)); *see also Hendricks v. Novae Corporate Underwriting, Ltd.*, 13-cv-5422, 2016 WL 397286, *3–4 (N.D. Ill. Feb. 1, 2016) (refusing to "carry over its determination that Texas law applies to the validity of the assignment agreement . . . to the distinct breach of contract issue"). And, apart from suggesting that Illinois law does not govern here, Mesa identifies no conflict between Colorado and Illinois law as to the Information Exclusion. *See* Pl.'s Resp. at 8. As a result, the Court again applies the law of Illinois, the forum state.

counts derive from "the very same conduct," namely "the sending of unsolicited fax advertisements." 58 N.E.3d at 845–46. Accordingly, Orrington's common law claims "arise out of" Mesa's alleged TCPA violation, triggering the Information Exclusion. *Id*. at 846.

Furthermore, Mesa's ardent effort to distinguish the wording in the Information Exclusion with those at issue in other cases, *see* Pl.'s Resp. at 6-7, is unpersuasive. The Court cannot discern any material difference between, on the one hand, damages "arising out of any actual or alleged or threatened violation of [the TCPA]" and, on the other hand, damages "arising . . . out of any action or omission that violates or is alleged to violate [the TCPA]." Although Mesa argues that the latter focuses on the insured's *conduct* while the former is concerned about *TCPA violations*, this is precisely the semantic argument that was rejected by the Illinois appellate court in *Fayezi*, 58 N.E.3d at 845.

Unable to distinguish *Fayezi*'s facts, Mesa implores the Court to reject its reasoning. *See* Pl.'s Resp. at 8. But federal courts "give great weight to the holdings of the state's intermediate appellate courts." *Allstate Ins. Co. v. Menards, Inc.,* 285 F.3d 630, 637 (7th Cir. 2002). And although this Court could deviate from *Fayezi* if "there [we]re persuasive indications that the highest court of the state would decide differently," Mesa spotlights no such signals. *Addison Automatics*, 2015 WL 1543216, at *6. Seeing no reason to eschew *Fayezi*'s analysis, the Court finds that the Information Exclusion relieved Federal of any obligation to defend or indemnify Mesa.

## Conclusion

For the reasons set forth above, Federal's motion for judgment on the pleadings is granted [16]. Judgment will be entered in favor of Defendant Federal Insurance Company as to all counts. This case is terminated.

**IT IS HEREBY ORDERED.**          **ENTERED: 1/28/20**

_____
**JOHN Z. LEE**
**United States District Judge**